IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMIE ALLISON,

       Plaintiff,

v.                                                                    No. Civ. 09-275 RHS/LFG

BOEING LASER TECHNICAL SERVICES,

       Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment ("Motion"), filed Sept. 25, 2009 **[Doc. 29]**. Having considered the parties' submittals, counsels' argument presented at a hearing held on July 19, 2010, the relevant authorities, and being otherwise advised in the premises, the Court concludes that the Motion will be granted in part and denied in part. The Court has previously granted a Joint Motion to Stay Pending Discovery and Pretrial Deadlines (docket no. 32) wherein all pending discovery and pretrial deadlines were stayed until after the Court issues a ruling on the instant Motion for Summary Judgment.

## *Background*

This action was removed from the Second Judicial District Court for the State of New Mexico on March 23, 2009. Plaintiff alleges various New Mexico state law claims against the Defendant arising out of Plaintiff's employment with the Defendant. Plaintiff was employed by Defendant and worked for Defendant in Buildings 416 and 774 of Kirtland Air Force Base ("KAFB") located in Albuquerque, New Mexico. The location of these buildings is within a federal enclave and is land over which the federal government has exclusive jurisdiction

pursuant to U.S. Const. art. 1, § 8, cl. 17.  Pursuant to the briefing submittals of the respective parties, the following statements are "undisputed material facts":

    1.  Plaintiff Jimmie Allison ("Plaintiff" or "Allison") worked for Boeing LTS from October 8, 2003 until December 31, 2007 (Complaint at ¶ 5).

    2.  Throughout his tenure with Boeing LTS, Plaintiff worked as a Senior Electrical Engineer on the Air Force Research Laboratory/Scorpworks program.  (Id.. at ¶ 5).

    3.  At all times, Plaintiff's employment with Boeing LTS was at-will.  (Employment Application of J. Allison dated September 12, 2003, Certification Statement, Affidavit of Joan Hauser).

    4.  Plaintiff never had any employment contract with Boeing LTS, and Plaintiff's employment application specified that his employment with Boeing LTS was at-will.  (Employment Application of J. Allison dated September 12, 2003, Certification Statement, Hauser Affidavit at ¶ 3).

    5.  The land containing Building 774 was ceded to the United States government and the United States accepted exclusive jurisdiction over the land, in 1952.  (Email from J. Schupe to E. Rocush dated March 19, 2009, with attachments ("Schupe email")).

    6.  The land on which Buildings 399 and 416 are located was ceded to the United States government, and the United States accepted exclusive jurisdiction over the land, in 1954.  (Schupe email).

    7.  In Plaintiff's Objection to Defendant's Notice of Removal, previously submitted to this Court, Plaintiff affirmatively argued that his employment with Boeing LTS took place exclusively in the recognized federal enclave of KAFB.  Specifically, Plaintiff states in his Objection that "exclusive federal jurisdiction exists," that this litigation involves a "matter fully

centered at the employment location within the military enclave," and that "Plaintiff was employed by Defendant at its business unit within a secured area of Kirtland Air Force Base for over four years as the Senior Engineer for a distinct work group." (Plaintiff's Objection to Defendant's Notice of Removal ("Objection") **[Doc. 7]**, at 1, 4-5).

8. Likewise, in Plaintiff's Reply to Defendant's Response to Plaintiff's Objection to Defendant's Notice of Removal **[Doc. 12]**, Plaintiff affirmatively argued as follows:

> Plaintiff's point is that Defendant knew all along that it was located well within an undisputed federal enclave, in a secure research complex under a federal contract. The Defendant knew where its employee worked and that the functions he performed were done there, within the confines and security of Kirtland Air Force Base (KAFB).
>
> Paragraph 5 of the Complaint states: "That Plaintiff Jimmie Allison worked for the Boeing Company from October 8, 2003, through December 31, 2007. During this time Mr. Allison worked with Boeing LTS as the Senior Electrical Engineer for the AFLR/ScorpWorks group." Defendant knew as an absolute fact that the location in which Plaintiff did his work was exclusively located in two specific buildings within KAFB, buildings 416 and 774, by definition a part of a federal enclave.
>
> Anyone who enters KAFB would realize that the federal government controls and runs the premises. Defendant would vicariously know the location where its employee was assigned to work, and in this case did work, and that it was on a federal military base.

9. Plaintiff's Complaint alleges that Tim Pressnall defamed him by drafting certain disciplinary memoranda and supporting documentation and sharing these documents with Boeing LTS Human Resources and management. (Complaint at ¶¶ 89-97).

10. Plaintiff also alleges that Boeing LTS management defamed him by relying on Pressnall's statements and republishing them in disciplinary communications issued to Plaintiff. (Complaint at ¶¶ 88-101).

11. Plaintiff alleges that Pressnall defamed him by informing Boeing LTS's Air Force customers that Plaintiff was not permitted to attend meetings with the Air Force customer and was not allowed to communicate directly with the Air Force. (Complaint at ¶¶ 99-100).

12. Plaintiff alleges that Boeing LTS defamed him in its submissions to the New Mexico Department of Workforce Solutions when it responded to Plaintiff's claim for unemployment benefits. (Complaint at ¶¶ 102-103).

13. Plaintiff's First Amended Complaint seeks "compensatory and punitive damages in an amount to be proven at trial" for his defamation claim. (Complaint at ¶¶ 110).

14. Plaintiff's initial disclosure statement states that Plaintiff is seeking (1) compensatory damages for lost earnings, (2) compensatory damages for lost employment benefits, and (3) punitive damages. (Plaintiff's Rule 26A Initial Disclosure, at Section 4).

15. Boeing LTS is a wholly owned subsidiary of The Boeing Company. (Depo. of Doris Dickerson at 7:20-21).

16. The Boeing Company is headquartered in Chicago, Illinois. (Depo. of Doris Dickerson at 8:2-3).

17. Doris Dickerson was the Boeing LTS business manager at the time Mr. Allison was an employee. (Depo. of Doris Dickerson at 8:8-10).

18. Ms. Dickerson reported directly to Larry Pinkel, who was the president of Boeing LTS during Mr. Allison's employment. (Depo. of Doris Dickerson at 10:3-6).

19. Mr. Pinkel has an office at building 399 on KAFB and an office at the City Place Building in uptown Albuquerque, New Mexico, located off of the federal enclave. (Depo. of Doris Dickerson at 10:7-12).

20. Mr. Pinkel reports to Gary Fitzmire, who is the Vice President for Direct Energy Systems ("DES"). DES is located off the federal enclave in several locations including Albuquerque, New Mexico and St. Louis, Missouri. (Depo. of Doris Dickerson at 10:13 - 11:2).

21. Ultimately, the head of the Integrated Defense Systems ("IDS"), who at the time was Jim Albaugh, reports to Boeing headquarters in Chicago, Illinois. (Depo. of Doris Dickerson at 10:7-16).

22. The ECARB board that evaluated Mr. Allison included Mitch Villaneuva, the human resource director for DES. Mr. Villaneuva's office and the location he was at during the ECARB were not located on KAFB. (Depo. of Doris Dickerson at 21:17 - 22:10).

23. There were also other Boeing managers that conducted the ECARB and were on the ECARB board evaluating and making decisions regarding Mr. Allison that were located outside of the federal enclave and outside of the state of New Mexico when they made their decision. (Depo. of Doris Dickerson at 22:15 - 23:5 and Depo. of Timothy A. Pressnall at 16:10-25).

24. Boeing LTS did not conduct all of its work exclusively on a federal enclave. Boeing LTS conducts testing at several different locations outside of KAFB. (Depo. of Timothy A. Pressnall at 20:11 - 21:17).

25. Whitney Hilton, an investigator that came and spoke to Doris Dickerson regarding a complaint that Mr. Allison had put forth in regard to Waste, does not work on the federal enclave and is based out of Chicago, Illinois. (Depo. of Doris Dickerson at 25:19 - 26:11).

26. Corrective Action Memos ("CAM"), which Mr. Allison was issued, are reviewed by a group of people that are not located on KAFB. (Depo. of Doris Dickerson at 37:13-23).

27. The Boeing Application Tool that creates the Boeing Employee Corrective Action Memo form is not located on KAFB. (Depo. of Doris Dickerson at 38:25 -39:14).

28. Katrina Grooms, who is with Boeing EEOC, was also an investigator that contacted Doris Dickerson to discuss a complaint regarding Mr. Allison. (Depo. of Doris Dickerson at 40:2-5).

29. Ms. Grooms' Office is located in Houston, Texas, not on KAFB. (Depo. of Doris Dickerson at 39:25 - 40:5-7).

30. There are New Mexico State Workmen's Compensation law posters at Boeing LTS located on KAFB so that everybody is aware of the state laws. (Depo. of Timothy A. Presnall at 13:11, 14:5).

31. Boeing Global Diversity and Employee Rights Office is not located on KAFB. (Depo. of Timothy A. Pressnall at 39:1-8).

32. Mr. Allison worked with Captain Thomas Poupakis, from the United States Air Force, on a professional basis as a client of the Boeing Company. (Affidavit of Thomas Poupakis, ¶ 2, 3).

*Federal Enclave Doctrine*

The Constitution grants Congress the power to exercise exclusive jurisdiction over enclaves acquired by the United States with the state's consent for certain specified purposes. See U.S. Const. art. I, § 8, cl. 17. "The jurisdiction exercised by the United States over federal enclaves is exclusive unless the deed of cession provides to the contrary or unless the cession is not accepted in the manner required by law." Lord v. Local Union No. 2088, 646 F.2d 1057, 1059 (5th Cir. 1981). Defendant argues that all of Plaintiff's claims (except defamation) should be dismissed as inapplicable and unenforceable pursuant to the federal enclave doctrine.[1]

---

[1] Defendant argues that Plaintiff's defamation claim should be dismissed on grounds other than the federal enclave doctrine.

Specifically, Defendant contends that Plaintiff's state law claims of Breach of Implied Contract, Breach of the Covenant of Good Faith and Fair Dealing, Retaliatory Discharge[2] and Prima Facie Tort (hereinafter, "Employment Claims") did not exist in New Mexico when the United States acquired exclusive jurisdiction over the enclave, and thus, are not applicable on the federal enclave.

"[T]hose state laws which are effective within the enclave 'lose their character as laws of the state and become laws of the Union.'" Celli v. Shoell, 40 F.3d 324, 328 n.4 (10th Cir. 1994) (quoting Stokes v. Adair, 265 F.3d 662, 665 (4th Cir.)).  Plaintiff points out that "[t]here are three theories as to the development of federal enclave law in relation to state law." (Response at 11 (quoting Kelly v. Lockheed Martin Servs. Group, 25 F.Supp.2d 1, 4 (D.P.R. 1998) (internal quotation marks and citation omitted)). Under the first theory, "when an area becomes a federal enclave, the local law in effect at the time of cession continues to apply until it is abrogated by federal law." Kelly, 25 F.Supp.2d at 4 (citing James Stewart & Co. V. Sadrakula, 309 U.S. 94, 100 (1940); other citation omitted). Under the second theory, "subsequent state regulatory changes consistent with the state law in place at the time of cession are applicable within a federal enclave." Kelly, 25 F.Supp.2d at 4 (citing Paul v. United States, 371 U.S. 245, 269 (1963)). Under the third theory, "all state law rules of the state in which the enclave exists are applicable within the federal enclave unless they interfere with the federal government's

---

[2] Defendant contends, and the Court agrees, that while Plaintiff identifies "Wrongful Discharge" and "Retaliatory Discharge" as two separate claims in his Complaint, they are cognizable as one claim of Retaliatory Discharge. See Garcia v. Middle Rio Grande Conservancy Dist., 918 P.2d 7, 10 (N.M. 1996) (noting that a "wrongful discharge in violation of public policy [is a] retaliatory discharge" (quoting Hartbarger v. Frank Paxton Co., 857 P.2d 776, 779 (N.M. 1993) (internal quotation marks omitted))). Plaintiff offers no argument to the contrary in his Response.

jurisdiction." Kelly, 25 F.Supp.2d at 4 (citing Howard v. Commissioners of the Sinking Fund of the City of Louisville, 344 U.S. 624 (1953)).  The Kelly court found "that the application of either the first or second theory is most consistent with the language of the Constitution and federal enclave jurisprudence."  Kelly, 25 F.Supp.2d at 4.

Although it is not entirely clear, Plaintiff apparently argues that this Court should apply the third theory to this case.  However, Plaintiff cites no authority indicating that the third theory has ever been adopted or applied in this Circuit.  Indeed, at least one district court in this circuit has refused to apply the third theory of federal enclave law, explaining:

> It is well settled that state laws in effect at the time of the transfer of jurisdiction over a federal enclave remain in force and become a part of the federal law governing the enclave. *However, subsequently enacted state laws have no application.*

Celli v. Shoell, 995 F.Supp. 1337, 1343 (D.Utah, 1998) (emphasis added) (citing Paul, 371 U.S. at 265; James Stewart & Co., 309 U.S. at 99-100; Stokes, 265 F.2d at 665) (dismissing plaintiff's state common law claims as barred by the federal enclave doctrine).  Moreover, it appears that the majority of courts faced with this issue have applied either the first or second theory.  See, e.g.,Lord, 646 F.2d at 1060 (concluding that "laws of the state adopted after the cession are without any force or effect on the federal enclave"); Brookhaven Science Asocs., LLC v. Donaldson, 2007 WL 2319141, at *6 (Aug. 9, 2007 S.D.N.Y.) (declining to apply the third theory) (not reported).  The Court concludes that in this case, application of the first or second theory is most consistent with federal enclave jurisprudence, and that under either of these theories, Plaintiff's Employment Claims are barred.

*Discussion*

Defendant contends that Plaintiff's Employment Claims were not recognized in New Mexico law prior to 1954, and thus, those claims do not apply within the federal enclave. Plaintiff argues that his Employment Claims are valid because both the Territory and the State of New Mexico "recognized contract law [and the employer-employee relationship] well before 1952, when Kirtland Air Force Base was ceded to the United States and became a federal enclave." (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") at 13, filed Dec. 30, 2009 **[Doc. 38]** (citations omitted)). Plaintiff further argues:

> [I]t is not necessary . . . to show case law prior to 1952 that specifically recognized the state law claims at issue in this matter. It is sufficient that Mr. Allison illustrate that the basic underlying legal theory was cognizable in New Mexico at the time of cession.

(Response at 15 (citing Paul v. United States, 371 U.S. 268 (1963)[3] for the proposition that the "current version of that basic law governs as long as it does not conflict with federal interests")).

In Paul, the United States Supreme Court did not see why California's current regulatory scheme of price control of milk would not apply on the federal enclave, where "price control of milk [existed] at the time of [federal] acquisition and *the same basic scheme* ha[d] been in effect since that time . . . ." Paul, 371 U.S. at 269 (emphasis added). Under the circumstances, the Court concluded that "the [state's] current price controls over milk are applicable [on the federal enclave] . . . provided the basic state law authorizing such control has been in effect since the times of these various [federal] acquisitions." Paul, 371 U.S. at 269. The Supreme Court's reasoning in Paul does not support Plaintiff's argument that his contract and tort law claims

---

[3]Plaintiff did not provide a point cite for this approximately 25 page opinion.

apply in the federal enclave simply because New Mexico recognized *some* form of contract and tort law prior to 1952.

Nor is the Court persuaded by Plaintiff's apparent argument that, regardless of when his Employment Claims were recognized, they apply in the federal enclave because New Mexico presumes "that a new rule adopted by a judicial decision in a civil case will operate retroactively." (Response at 16 (quoting Beavers v. Johnson Controls World Servs. Inc., 881 P.2d 1376, 1383 (N.M. 1994) (internal quotation marks omitted)). The key question in determining whether state law applies in a federal enclave is whether the state law *existed* at the time the United States accepted exclusive jurisdiction over the enclave.

Defendant points to evidence showing that none of Plaintiff's Employment Claims existed or was recognized under New Mexico law prior to 1954. See Hartbarger v. Frank Paxton Co., 857 P.2d 776, 781 (N.M. 1993) (noting that the New Mexico Supreme Court "recognized an implied employment contract in Forrester v. Parker, [606 P.2d 191, 192 (N.M. 1980)]); Bourgeous v. Horizon Healthchare Corp., 872 P.2d 852, 857 (N.M. 1994) (recognizing a claim for breach of the implied covenant of good faith and fair dealing in an employment relationship); Vigil v. Arzola, 699 P.2d 613, 619 (N.M.Ct.App. 1983) (recognizing the tort of retaliatory discharge), cited in Hartbarger v. Frank Paxton Co., 857 P.2d 776, 783 n.5 (N.M. 1993); Hagebak v. Stone, 61 P.3d 201, 208 (N.M.Ct.App. 2002) (noting that "New Mexico first recognized a cause of action for prima facie tort in Schmitz [v. Smentowski, 785 P.2d 726, 726 (N.M. 1990)]"). Plaintiff does not point to persuasive evidence showing that any of his Employment Claims existed prior to 1954.

Plaintiff has "affirmatively argued that his employment with Boeing LTS took place *exclusively* on the recognized federal enclave of KAFB." (Motion at 3, ¶ 11 (emphasis added);

Response at 9, ¶ 11).  Plaintiff also alleges that he "did regularly do material work for Boeing LTS at his home . . . located off of the federal enclave . . . ."  (Response at 9, ¶ 4).[4]  However, Plaintiff does not deny that during his employment with Boeing LTS, he "was *based* in Building 416 . . . . [and] also performed some work in . . . Building 774, on KAFB."  (Motion at 2, ¶ 7 (emphasis added)).  Plaintiff also asserts, *inter alia*, that Boeing is headquartered in Chicago, Illinois and that some Boeing personnel maintain offices or perform work for Boeing LTS off of the federal enclave.  However, Plaintiff does not dispute that, during his employment with Boeing LTS, "Boeing LTS's Human Resources and management personnel were based in, and worked out of, Building 399 on KAFB."[5]  (Motion at 3, ¶ 8 (citation omitted)).  To the extent that Plaintiff argues his claims are not barred by the federal enclave doctrine because some of the alleged conduct occurred off the federal enclave, that argument is rejected.[6]  The Court

---

[4]Plaintiff offers no explanation for the apparent inconsistency between his argument that his employment took place exclusively at KAFB and his allegation that he regularly performed work for Boeing LTS at his home.  Nor does Plaintiff allege how much work he performed for Boeing LTS at his home.

[5]The parties do not dispute that Buildings 399, 416 and 774 are located at Kirtland Air Force Base on land that is within a federal enclave.

[6]See, e.g., Rosseter v. Industrial Light & Magic, 2009 WL 210452, at *2 (N.D.Cal. Jan. 27, 2009) (slip copy) (rejecting plaintiff's argument that his claims did not arise on the federal enclave because the "defendant maintains operations outside the enclave"); Powell v. Tessada & Assocs., 2005 WL 578103, at *2 (N.D.Cal. Mar. 10, 2005) (not reported) (concluding that "regardless of where the decision not to retain Plaintiffs was made, the decision reflects Defendants' employment practice on the enclave"); Lockhart v. MVM, Inc., 97 Cal.Rptr.3d 206, 212 (Ct.App.2dDist.Cal. 2009) (indicating "place of employment as the significant factor in determining whether the plaintiff's employment claims arose under the federal enclave doctrine"); Taylor v. Lockheed Martin Corp., 78 Cal.App.4th 472, 481 (Ct.App.2d Dist. 2000) (rejecting plaintiff's argument that his claims did not arise on the enclave because he was on paid suspension and not working on the enclave when he was terminated; explaining that "[a]s the employee of a contractor operating on the enclave, [plaintiff's] claims are governed by the enclave's law, rather than by state law") (citations omitted).

concludes that Plaintiff fails to raise a triable issue of fact as to whether his Employment Claims arose outside of the federal enclave or whether they existed prior to 1954. Accordingly, the Court will dismiss all of Plaintiff's Employment Claims as barred pursuant to the federal enclave doctrine.

*Defamation claim*

Defendant argues that Plaintiff's claim of defamation should be dismissed for three general reasons. First, Defendant contends that Plaintiff failed to sufficiently plead that actual damages were proximately caused by Boeing LTS's allegedly defamatory statements. Second, Defendant contends that Boeing LTS's statements made to the New Mexico Department of Workforce Solutions ("unemployment department") in responding to Plaintiff's claim for unemployment benefits are absolutely privileged. Third, Defendant contends that Boeing LTS's statements made in the context of Plaintiff's disciplinary proceedings are conditionally privileged.

"New Mexico's absolute immunity defense extends to any allegedly defamatory statements Plaintiff's employer made in the process of Employment Security Division proceedings." Allen v. Centex American Gypsum, Civ. No. 94-0045 JB/LFG, 1994 WL 801478, at *2 (D.N.M. Dec. 5, 1994) (citing Zuniga v. Sears, Roebuck, & Co., 100 N.M. 414, 417, 671 P.2d 662, 665 (Ct.App.)) (not reported). Plaintiff "offers no persuasive reason why th[i]s immunit[y] should not apply in this case." Allen, 1994 WL 801478, at *2. Indeed, Plaintiff offers no response whatsoever to Defendant's argument that its statements to the unemployment department are absolutely privileged. Accordingly, Plaintiff's claim that he was defamed by statements Defendant made to the New Mexico Department of Workforce Solutions will be

dismissed. The Court will otherwise deny Defendant's Motion for Summary Judgment regarding Plaintiff's defamation claim at this time.

**WHEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Doc. 29]** is **granted** as follows:

1. Plaintiff's claims of Wrongful Discharge, Breach of Implied Contract, Breach of the Covenant of Good Faith and Fair Dealing, Retaliatory Discharge and Prima Facie Tort are **dismissed** pursuant to the federal enclave doctrine; and

2. Plaintiff's claim of Defamation is **dismissed** only with respect to alleged statements that Defendant made to the New Mexico Department of Workforce Solutions.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment **[Doc. 29]** is **denied without prejudice** as to the remainder of Plaintiff's claim of Defamation.

**IT IS FURTHER ORDERED** that the stay entered October 19, 2009 (docket no. 32) is hereby lifted.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE